IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

RICHARD HARRISON and
AMANDA FALLON-HARRISON,

        Plaintiffs,

vs.

        CASE NO. 512011CA4628-ES

        DIVISION: β

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

        Defendant.
_____/

## COMPLAINT

Plaintiffs, RICHARD HARRISON and AMANDA FALLON-HARRISON ("MR. HARRISON & MRS. FALLON-HARRISON"), by and through their undersigned counsel, hereby file their Complaint against the Defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY ("LIBERTY MUTUAL"), and as grounds therefore state as follows:

### GENERAL ALLEGATIONS

1. This is an action arising out of an insurance contract against the Defendant, LIBERTY MUTUAL.

2. At all times relevant hereto, Plaintiffs owned the real property located at 5341 Treig Lane, Wesley Chapel, Pasco County, Florida ("the Insured Property").

3. LIBERTY MUTUAL is in the business of providing property insurance coverage to residents of Florida in exchange for policy premiums.

4. In consideration of the premium paid to it by Plaintiffs, LIBERTY MUTUAL issued a contract of homeowner's insurance to Plaintiffs, Policy Number H32-251-

EXHIBIT 2

059271-409-3 ("the Policy"), which was in full force and effect at the time loss and damage occurred as a result of sinkhole activity to the Insured Property on or about July 7, 2010. A certified copy of the Policy is attached as Exhibit "A"[1].

5. The Policy extends coverage for damage and repairs to Plaintiffs' home and land, as well as other coverages, if the Insured Property is damaged by a covered peril.

6. The Insured Property was damaged by sinkhole activity on or about July 7, 2010, and Plaintiffs continue to suffer such loss.

7. Plaintiffs reported the loss and damage to LIBERTY MUTUAL. From this point in time forward, LIBERTY MUTUAL had notice of Plaintiffs' claim for damages.

8. In response to Plaintiffs' claim, LIBERTY MUTUAL retained the services of Rimkus Consulting Group, Inc. ("RIMKUS"), a geotechnical and engineering firm, to inspect, test, and evaluate the damage to the Insured Property and needed repairs.

9. RIMKUS prepared a written report, dated October 15, 2010, of its findings and conclusions from its investigation of the Insured Property. A copy of the RIMKUS report is attached as Exhibit "B"[2].

10. In this report, RIMKUS stated that "the analysis and tests conducted were of sufficient scope to conclude that conditions consistent with sinkhole activity were

---

[1] The copy of the Policy attached to the Complaint is missing p. 2 of the Declaration pages as well as p. 2 of Amendatory Endorsement FMHO 2493 (5/03). A complete, certified copy of the Policy has been requested from Liberty Mutual and will be filed as an amended Exhibit "A" upon receipt.

[2] Plaintiffs have attached the RIMKUS report which was provided to them by Liberty Mutual. However, it appears that this report is not complete as it is missing the Soil Boring Location Map (Section V, Attachment C), the Soil Boring Logs (Section V, Attachment D), and the Floor Elevation Survey (Section V, Attachment E). Plaintiffs have requested a complete copy of the RIMKUS report and will file the complete report as an amended Exhibit "B" upon receipt from Liberty Mutual.

evidenced and cannot be eliminated as a cause of damage to the structure in accordance with Florida State Statute 627.707..." (See Exhibit "B").

## COUNT I
## BREACH OF CONTRACT

11. This is an action for damages for breach of insurance contract against Defendant, LIBERTY MUTUAL.

12. The amount in controversy in this action exceeds the sum of Fifteen Thousand and 00/100 ($15,000.00) Dollars, exclusive of pre-judgment interest, court costs, and attorney's fees.

13. After sinkhole activity was confirmed by RIMKUS, LIBERTY MUTUAL retained W.A. Neumann Construction Inc. ("Neumann") to prepare an estimate of the above ground damages to the Insured Property.

14. In an estimate dated December 6, 2010, Neumann concluded that it would cost $5,117.81 to repair the driveway of the Insured Property. (See Exhibit "C").

15. In a separate estimate dated December 28, 2010, Neumann concluded that it would cost $17,740.73 to repair the above ground damages to the dwelling. (See Exhibit "D").

16. In a letter dated February 18, 2011, LIBERTY MUTUAL provided Plaintiffs with a copy of the Neumann estimates. (See Exhibit "E").

17. LIBERTY MUTUAL then issued Check Number 26809807, dated February 18, 2011, in the amount of $21,858.54 for above ground damages to the Insured Property ($5,117.81 + $17,740.73 less the $1,000 deductible). (See attached Exhibit "F").

18. As the Insureds questioned LIBERTY MUTUAL'S adjustment, dwelling estimate, and payment, they retained Triad Consulting Group ("Triad") to obtain a second opinion regarding the above ground damages and necessary repairs.

19. Triad conducted an inspection of the damages to the Insured Property on June 9, 2011. Triad subsequently prepared its own estimate and concluded that the necessary above ground repairs to the Insured Property (both the driveway and dwelling) will cost $40,409.72. (See attached Exhibit "G").

20. On July 15, 2011, Plaintiffs (through their public adjuster) advised LIBERTY MUTUAL that they disputed its dwelling estimate and payment and provided LIBERTY MUTUAL with a copy of the Triad estimate. (See composite Exhibit "H").

21. From that point forward, LIBERTY MUTUAL was aware of a dispute regarding the valuation of the damages to the dwelling and its payment of the claim.

22. Thereafter, LIBERTY MUTUAL issued Check Number 27871929, dated August 16, 2011, in the amount of $835.12 for unspecified "supplemental cosmetic damages." (See attached Exhibit "I").

23. LIBERTY MUTUAL'S payment of $835.12 was not accompanied by a letter or estimate explaining how LIBERTY MUTUAL arrived at its additional payment for "supplemental cosmetic damages."

24. As demonstrated by the Triad estimate, LIBERTY MUTUAL under-scoped and undervalued, and underpaid the above ground damages to the Insured Property even after its "supplemental" payment.

25. Prior to the filing of this lawsuit, LIBERTY MUTUAL knew of the dispute over the cost to repair the above ground damages to the dwelling of the Insured

Property and that Plaintiffs' claimed the amount of the damages exceeded the Neumann estimate and its prior payments.

26. As a direct result of LIBERTY MUTUAL'S undervaluation and underpayment of Plaintiffs' damages, LIBERTY MUTUAL has breached its insurance contract with Plaintiffs.

27. LIBERTY MUTUAL has failed and/or refused, and continues to fail and/or refuse to, provide full coverage and pay the full amount of damages to the Insured Property despite knowing it is required to do so.

28. Plaintiffs have done and performed all those matters and things properly required of them under the Policy, alternatively, they have been excused from such performance by LIBERTY MUTUAL'S statements, actions, and omissions.

29. As a direct result of LIBERTY MUTUAL'S breach of its insurance contract, Plaintiffs have been underpaid for the above ground damages to the Insured Property and will suffer such loss in the future.

30. Additionally, it has been necessary for Plaintiffs to incur and become obligated for attorney's fees and costs in the prosecution of this action. Florida Statute §627.428 provides for the recovery of such attorney's fees in the event of such need.

WHEREFORE, Plaintiffs pray this Honorable Court determine that LIBERTY MUTUAL has breached its contract; to enter an Order directing LIBERTY MUTUAL to provide coverage and pay, in full, Plaintiffs' contractual and compensatory damages under the contract; to award pre-judgment interest on the amounts unpaid; to award the costs of this action; to award attorney's fees pursuant to Florida Statute §627.428; and to grant such other relief as this Court may deem just and appropriate.

Further, Plaintiffs request a trial by jury on all issues so triable.

## COUNT II
## DECLARATORY ACTION

31. Plaintiffs adopt and incorporate paragraphs 1 – 10 and 28 and 30, if restated fully herein.

32. This is an action for declaratory judgment filed pursuant to Chapter 86 of the Florida Statutes.

33. This action is filed for the purpose of determining an actual controversy between Plaintiffs and LIBERTY MUTUAL.

34. In its report, RIMKUS recommended a "limited mobility displacement grouting program" in order to remediate the effects of sinkhole activity. (See Exhibit "B").

35. LIBERTY MUTUAL subsequently obtained bids for the grouting program recommended by RIMKUS from three (3) different remediation companies.

36. In a February 18, 2011 letter to the Insureds, LIBERTY MUTUAL advised that the average costs of the three (3) grouting bids is $57,045.00. (See Exhibit "E"). LIBERTY MUTUAL also advised that "[o]nce you have chosen the grouter please contact me with the name of the company and copy of contract so we can release the payments as per contract." (See Exhibit "E").

37. LIBERTY MUTUAL has taken the position that limited mobility displacement grouting as recommended by RIMKUS is the subsurface repair that Plaintiffs must make in order to remediate sinkhole activity beneath the Insured Property.

38. Contrary to the requirements of the Policy and law, LIBERTY MUTUAL did not consult with Plaintiffs regarding the recommended subsurface repairs and instead required Plaintiffs to make the subsurface repairs recommended by RIMKUS on a "take it or leave it" basis.

39. As Plaintiffs question the propriety of RIMKUS' proposed repair plan required to be made by LIBERTY MUTUAL, Plaintiffs retained Bay Area Sinkhole Investigation & Civil Engineering, Inc. ("BASIC"), a geotechnical engineering firm, to obtain a second opinion as to the proper subsurface repairs.

40. After inspecting and evaluating the Insured Property, BASIC concluded that the grouting plan proposed by RIMKUS (and adopted by LIBERTY MUTUAL) will not properly stabilize the Insured Property.

41. BASIC concluded that the proper repair will include both compaction grouting and chemical grouting. (See attached Exhibit "J"). Although the repair methods of BASIC and RIMKUS are similar in nature, the repair recommended by BASIC is far more extensive than the RIMKUS repair and will cost between $151,150.00 and $172,740.00.

42. As a result of the facts set forth above, a dispute has arisen which has left Plaintiffs insecure, uncertain, and in doubt with respect to their rights and status of other equitable or legal responsibilities under the insurance contract, to wit: whether LIBERTY MUTUAL may decline to pay for the needed subsurface repairs to the Insured Property recommended by BASIC based on its position that the limited grouting recommended by RIMKUS is the appropriate subsurface remediation and repair to the Insured Property.

43. There exists a bona fide, actual, present, and practicable need for the declaration of the parties' rights, duties and obligations as LIBERTY MUTUAL has failed and/or refused to agree to provide the subsurface repair necessary to properly stabilize and repair the Insured Property.

44. There exists a present, ascertained, and ascertainable state of facts concerning the rights and obligations of both Plaintiffs and LIBERTY MUTUAL.

45. The rights and obligations of both Plaintiffs and LIBERTY MUTUAL under the Policy are dependent upon the facts, and law applicable to the facts, affecting coverage under the Policy.

46. Plaintiffs have an actual, present, adverse, and antagonistic interest in the subject matter described herein.

47. Plaintiffs respectfully seek one or more of the following declarations:

    A) LIBERTY MUTUAL did not follow Florida law as it did not "consult with" the Plaintiffs regarding below ground repairs recommended by RIMKUS before requiring Plaintiffs to make such repairs;

    B) The grouting plan proposed by RIMKUS and adopted by LIBERTY MUTUAL is inadequate and will not properly remediate sinkhole activity or repair the Insured Property;

    C) That LIBERTY MUTUAL must provide coverage and payment of repairs necessary to properly repair both the home and the land;

    D) That the BASIC report reflects the correct subsurface repair plan for the Insured Property using both compaction grouting and chemical grouting; and

E) Such further declaration by the Court as is supported by the law and the facts.

**WHEREFORE**, Plaintiffs seek a declaration of the parties' rights and duties under the Policy and, to the extent this impacts on their recovery under the Policy, recovery of their taxable costs and reasonable attorney's fees under Florida Statute §627.428 against LIBERTY MUTUAL.

Further, Plaintiffs request a trial by jury on all issues so triable.

Dated: 10/3/11

DANAHY & MURRAY, P.A.

MATTHEW R. DANAHY, ESQUIRE
Florida Bar No. 606693
KIMBERLY E. LOW, ESQUIRE
Florida Bar No. 36052
901 W. Swann Avenue
Tampa, Florida 33606
(813) 258-3600
(813) 258-3321 (fax)
Attorneys for Plaintiffs